UNITED STATES of America, Appellee,

v.

**William Raymond SLIPKA, Appellant.**

**No. 83–2086.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1984.

Decided June 1, 1984.

James M. Rosenbaum, U.S. Atty. by Thorwald Anderson, Jr., Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Daniel M. Scott, Federal Public Defender, D. Minn., Minneapolis, Minn., Geri L. Napuck, Legal Intern, for appellant.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

William Raymond Slipka was convicted of bank robbery under 18 U.S.C. § 2113(a), (d) (1982) and sentenced to twenty-one years in prison. He appeals, contending that (1) there was no probable cause for his warrantless arrest, and (2) the District Court[1] improperly considered prior unconstitutional juvenile convictions in setting the sentence. We affirm the conviction but vacate the sentence and remand for further proceedings.

### I.

On the morning of March 23, 1983, FBI Special Agent John F. Gunn was watching Slipka's home in Columbia Heights, a suburb of Minneapolis.[2] At about 10:40 a.m., Agent Gunn saw Slipka approach his (Slipka's) car, a blue Chrysler with a white top, carrying a pair of white athletic shoes with blue trim. Slipka was wearing sunglasses, a black leather coat, a white or light-colored shirt, blue jeans, and dark-colored shoes. When Slipka drove away, Agent Gunn followed but lost him in traffic.

About 12:20 p.m., Agent Gunn heard a report over his car radio that the Macalester-Groveland branch office of the Minnesota Federal Savings and Loan Association had been robbed. The suspect was described as a white male, six feet, two inches tall, with a heavy build, and wearing a dark leather jacket, blue jeans, white and blue athletic shoes, sunglasses, and a dark blue knit cap. He was reported to have left the scene in a white-topped car.[3]

Some three hours later, Agent Gunn again saw the Chrysler parked by Slipka's home. Slipka was standing by the open trunk of the car. When the two men made eye contact, Slipka slammed the trunk and ran. Agent Gunn gave chase until Slipka tripped and fell on the ground. As Agent Gunn approached, Slipka tried to throw away several items, later discovered to be a dark blue knit cap, a set of car keys, and a towel.

After arresting Slipka, Agent Gunn and his partner, Agent Sena, found two bills on Slipka's person which proved to be "bait money" taken in the robbery. When the agents retraced the chase route, they also found a red sock containing a gun and some plastic bags containing small amounts of white powder. A subsequent search of Slipka's car revealed several more bills which were part of the "bait money" taken in the robbery, along with other cash and a black leather jacket.

### II.

Slipka argues that the transmitted description of the robber was not sufficiently detailed, but rather was a general description applicable to a large number of people and could not give rise to probable cause to arrest any one individual. He also points out that flight from a police officer, standing alone, will not justify an arrest. We reject this argument. "The determination of whether probable cause exists ... depends on the cumulative effect of the facts in the totality of circumstances." *United*

---

1. The Hon. Donald D. Alsop, United States District Judge for the District of Minnesota.

2. Slipka was a suspect in several bank robberies. Transcript of Hearing on Motion to Suppress 19–20.

3. The getaway car was parked behind a fence, so witnesses only saw the top of it as it drove away.

States v. Everroad, 704 F.2d 403, 406 (8th Cir.1983) (citing United States v. McGlynn, 671 F.2d 1140, 1143 (8th Cir. 1982)).

■ Here, Agent Gunn knew that Slipka's appearance less than two hours before the robbery matched the description of the robber in almost every respect. This, coupled with Slipka's flight, would "warrant a prudent man in believing that [Slipka] had committed . . . an offense." Ibid. (quoting, e.g., Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Thus, Slipka's arrest was supported by probable cause, and the evidence subsequently seized was properly admitted at trial. See generally, e.g., Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."); United States v. Martinez-Gonzalez, 686 F.2d 93, 99–100 (2d Cir.1982); United States v. Green, 670 F.2d 1148, 1152 (D.C. Cir.1981). Accordingly, we affirm the judgment of conviction.

### III.

Slipka also argues that, in setting the twenty-one-year sentence, the District Judge considered several uncounselled, and therefore unconstitutional, juvenile adjudications listed in the presentence report. The convictions antedate In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 378 (1967), in which the Court held that the constitutional right to counsel applies to juvenile delinquency adjudications as well as to adult criminal prosecutions.

■ The first issue is whether Gault's recognition of the right to counsel at juvenile-delinquency adjudications is retroactive. We hold that it is. The right is one "that goes to the heart of the truth-finding function," the type of right that the Supreme Court has "consistently held to be

retroactive." Solem v. Stumes, —— U.S. ——, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984). Since Gault essentially extends the protections of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to juveniles, and since Gideon is retroactive, see Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963), Gault should be given the same retroactive effect. Further, neither adult criminal convictions nor juvenile-delinquency adjudications, when constitutionally infirm, may be used to enhance a defendant's sentence. See, e.g., United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Del Piano v. United States, 575 F.2d 1066 (3d Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); United States v. Norcome, 375 F.Supp. 270, 292 (D.D.C.), aff'd mem., 497 F.2d 686 (D.C.Cir. 1974); State v. Flores, 13 Or.App. 556, 511 P.2d 414 (1973).

■ The District Court denied Slipka's motion to strike references to his juvenile adjudications from the presentence report. The government points out that there is no evidence in the record as to whether Slipka was denied his right to counsel at the time of his juvenile convictions, and that even if there were, there is no evidence that the judge used those convictions to enhance the sentence. We agree, but we are unwilling to affirm on that basis. "Presuming waiver from a silent record is impermissible." Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Thus, we remand so that the District Court may state on the record whether Slipka's sentence was enhanced because of the juvenile convictions. See, e.g., United States v. Simon, 488 F.2d 1094 (8th Cir.1973) (per curiam), cert. denied, 417 U.S. 934, 94 S.Ct. 2647, 41 L.Ed.2d 238 (1974). If the Court answers affirmatively, and if it finds that those convictions were uncounselled, it should hold a new sentencing proceeding.

The judgment of conviction is affirmed. The cause is remanded to the District Court for further proceedings in accordance with this opinion. If the Court states

that it did not consider Slipka's juvenile convictions in fixing his sentence, or if it finds that those convictions were not un-counselled, then the sentence will also stand affirmed. If, on the other hand, the Court states that it did consider the prior convictions, and if it finds that they were uncounselled, a new sentencing proceeding should be held.

It is so ordered.