UNITED STATES of America,
Plaintiff-Appellee,

v.

Howard M. BUBIS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James Warner BASS,
Defendant-Appellant.

Nos. 83–2708–SI, 84–1144–SI.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1984.

Decided Sept. 28, 1984.

Richard C. Turner, U.S. Atty., Ronald M. Kayser, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

James R. Vincent, Altoona, Iowa, for appellant Bass.

Mark S. Pennington, Kutmus & Pennington, P.C., Des Moines, Iowa, for appellant Bubis.

Before HEANEY and FAGG, Circuit Judges, and COLLINSON,* Senior District Judge.

COLLINSON, Senior District Judge.

Appellants Howard Mitchell Bubis and James Warner Bass were indicted with their codefendants Myron Daniel and Bruce Kadota on September 23, 1983. Appellant Bubis was convicted on stipulated facts of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; possession with intent to distribute approximately forty-three ounces of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); possession of a fully automatic machine gun which had not been registered to him in violation of 26 U.S.C. §§ 5861(d) and 5871; and unlawfully carrying a firearm during the commission of the offense of possession with intent to distribute cocaine in violation of 18 U.S.C. § 924(c)(2). Appellant Bass was convicted after a jury trial of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; possession of a fully automatic machine gun which had not been registered to him in violation of 26 U.S.C. §§ 5861(d) and 5871; and unlawfully carrying a firearm during the commission of the offense of conspiracy to distribute cocaine in violation of 18 U.S.C. § 924(c)(2). The primary issue on appeal from these convictions is the legality of Bubis' arrest. Bubis maintains that his warrantless arrest was not supported by probable cause and, therefore, the district court erred in denying his motion to suppress the evidence seized following his arrest. In urging reversal of his convictions, Bass contends that his arrest and the evidence seized for use against him were a result of the unlawful arrest of defendant Bubis. For the reasons discussed below, we reject the appellants' arguments and affirm the judgments of the district court.

On Sunday, September 4, 1983, an investigation occurred in Des Moines, Iowa, involving the United States Drug Enforcement Agency (DEA) and the Iowa Division of Criminal Investigation (DCI). An undercover informant introduced government agents, also acting undercover, to the appellants' codefendant, Myron Daniel. Agent Overbaugh of the DEA, who was termed the "key negotiator" for the agents, arranged to purchase approximately three pounds of cocaine. Daniel informed the agents that three individuals would bring the cocaine from Florida to Des Moines by chartering a private jet. Through a telephone call to Daniel from codefendant Kadota, the suppliers of the cocaine requested that the transaction be completed in Iowa City rather than Des Moines, but Agent Overbaugh refused to travel to Iowa City. Daniel later received another telephone call informing him that Kadota and his two partners were approximately 100 miles from Des Moines and that they would lease a car and arrive in Des Moines within a few hours. Agents set up a command post at the Holiday Inn South on Fleur Drive in Des Moines. Kadota arrived there at approximately 5:21 p.m. and met in room 707 with Daniel, several government agents, and the undercover informant. At this time, Kadota offered to

* The Honorable William R. Collinson, United States Senior District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

sell and Agent Overbaugh purchased four ounces of cocaine for $7000.00. Kadota stated that the four-ounce transaction, rather than the three-pound transaction anticipated by the government agents, was made to assure Kadota that he was not dealing with police officers. Kadota also informed the agents that he was accompanied by two others who must be consulted before delivering the balance of the cocaine. Kadota advised the agents that he and his companions had leased a Lear jet in Florida and had flown to a location in the midwest on the evening of September 3, 1983. They flew to another location in Iowa on September 4, 1983, rented a car with Iowa license plates and drove to Des Moines. Kadota stated that he and his partners had arrived in Des Moines approximately one hour before his meeting with the agents which occurred at 5:21 pm. At approximately 6:00 p.m. Kadota left room 707 after informing Agent Overbaugh that he was required to make telephone calls to his partners at certain times, or "something was going to happen." Kadota returned to the room at approximately 6:11 p.m.

At approximately 6:30 p.m., after concluding the transaction involving four ounces of cocaine, Kadota left the hotel room and was observed walking to the pay phones at the hotel lobby. At approximately 6:35 p.m., Agent Carter of the DCI who was conducting surveillance across the street from the Holiday Inn South, observed a 1981 beige Chevrolet automobile with Linn County, Iowa, license plates being driven by a large male with a black beard leave the parking lot and travel south on Fleur Drive. At approximately 6:58 p.m. Kadota was observed leaving the Holiday Inn South in a taxicab and traveling to the Hilton Inn, also on Fleur Drive approximately three to four miles south of the Holiday Inn where he exited the cab and walked into the Hilton Inn. At approximately 7:05 p.m., he made a telephone call, then left the Hilton Inn, walked next door, and entered the Hyatt House. Surveillance agents lost contact with Kadota at this point.

Agents Carter and Hallock of the DCI and an agent of the DEA remained in the area of the Hyatt House in an attempt to locate Kadota. At approximately 7:40 p.m., the agents were informed by other agents that Kadota had returned to the Holiday Inn South to make a second narcotics transaction. The agents then checked with the desk clerk at the Hyatt House and learned that at approximately 4:20 p.m. that afternoon, a large adult male with a black beard had checked into the hotel. This man had paid the room deposit from a large roll of cash, stating to the clerk that he normally paid with credit cards but had just arrived by airplane and had left his credit cards on the plane. The agents learned that the individual had registered under the name of "Howard Hoover" with a Florida address, and that he was staying in room 135 with one other person. Agents Hallock and Carter then set up their post outside room 135 at the Hyatt House. At approximately 8:13 p.m., the agents observed the same 1981 beige Chevrolet automobile with the driver earlier observed at the Holiday Inn South appear and park directly across from room 135. A police radio check confirmed that the 1981 Chevrolet automobile had been rented from a leasing company in Cedar Rapids, Iowa. Agents observed appellant Bubis get out of this vehicle, go to the trunk of the car, remove a plastic yellow shoe bag and go directly into room 135.

Meanwhile, as noted previously, Kadota returned to room 707 of the Holiday Inn South at approximately 7:40 p.m. and proceeded to negotiate a cocaine transaction of twenty-four ounces with the agents. Kadota informed the agents that he could not risk losing all of the cocaine in a single transaction, but that he could be back in a "heartbeat" with the balance of the cocaine. Kadota also offered to take one person to the Des Moines airport, across the street from the Hyatt House, to confirm the existence of the Lear jet. Kadota was arrested at approximately 8:30 p.m. This arrest and all other information available to agents during the investigation was

shared among the other agents including Agents Carter and Hallock stationed outside room 135 at the Hyatt House.

At approximately 8:32 p.m., Agents Carter and Hallock observed Bubis leave room 135, carrying the same plastic shoe bag he had earlier taken into the room. Bubis opened the trunk of the Chevrolet automobile, placed the bag into the trunk, entered the vehicle, and begin to back out of the parking space.

At this time, Agent Carter blocked Bubis' automobile with his car. Agents Hallock and Carter approached defendant and advised him to stop and exit the car. Both agents had their badges out and their weapons drawn. The agents requested Bubis' driver's license which identified defendant as Howard M. Bubis from the state of Florida. Bubis advised the agents that he had checked into the Hyatt House about 4:00 p.m. and that the car he was driving was leased. Bubis also informed the agents that there was another man in room 135 and that the individual was armed with a machine gun and dangerous. After additional agents arrived, Bubis was taken to a nearby telephone and allowed to advise the occupant of room 135 to surrender. Appellant Bass then left the room and was immediately arrested. Concealed weapons were taken from the persons of Bubis and Bass, a loaded machine gun with additional ammunition and various items of personal belongings were taken from room 135, and cocaine was seized from the trunk of the rental vehicle.

Appellants filed motions to suppress the evidence seized on the basis that the officers lacked probable cause to arrest Bubis, and the subsequent arrest of Bass and seizure of evidence were fruits of this illegal arrest. After an evidentiary hearing, the district court denied the defendants' motions to suppress on the basis that the officers had probable cause to arrest Bubis at the time they stopped and questioned him.

The district court did not rely on one or two facts alone to reach this decision, but found that "[t]he totality of the facts and circumstances within the agents' knowledge and their cumulative effect were more than sufficient to justify a prudent person in believing that Bubis and Bass were Kadota's associates and were committing a drug offense with Kadota." The court also concluded that the facts known to the officers at the time they arrested Bubis, combined with the information Bubis supplied to the officers regarding the armed person in room 135, constituted probable cause for the arrest of Bass. The court then found that the searches of the individual defendants, the rental vehicle, and the motel room were valid searches incident to lawful arrests. In addition, the court determined that the rental vehicle was properly impounded and its contents inventoried under 21 U.S.C. § 881 and 49 U.S.C. §§ 781 and 782 and that seizures of items from room 135 were made with the consents of Bubis and Bass. On appeal, Bubis and Bass do not independently challenge the legality of the searches themselves, but contend that the searches and evidence seized are tainted by the illegal arrest of Bubis. Bass likewise contends that his arrest was illegal because it resulted from the illegal arrest of Bubis. Accordingly, the only issue before this Court is whether there was probable cause to arrest Bubis.

In reviewing the validity of the arrest, we are guided by certain well-established general principles. Probable cause exists where the facts and circumstances within the arresting officers' knowledge are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of the circumstances." *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir.1983), citing *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982). In addition, "[p]robable cause is based on the collective knowledge of all the officers involved." *United States v. Briley*, 726 F.2d

1301, 1305 (8th Cir.1984). In reviewing a district court's factual findings and determination as to the existence of circumstances justifying a warrantless arrest, this Circuit applies the clearly erroneous standard. Under this standard, the trial court's decision must be affirmed unless there is not substantial evidence to support it, it evolves from an erroneous view of the applicable law, or upon considering the entire record, we are left with the definite and firm conviction a mistake has been made. *E.g., United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982).

■ After carefully reviewing the record, we conclude that the district court did not err in finding probable cause to arrest Bubis. At the time Bubis was initially stopped, the officers knew that the cocaine was to be flown from Florida to Iowa in a private airplane. It was also known that Kadota had flown to a location in Iowa about 100 miles from Des Moines, and had rented an automobile and arrived in Des Moines at approximately 4:00 p.m. In addition, the two occupants of room 135 checked into the Hyatt Hotel at approximately 4:00 p.m. using a Florida address. After the first delivery of cocaine, Kadota was observed leaving the Holiday Inn and was followed to the Hyatt House. A man fitting Bubis' description was observed driving away from the Holiday Inn in a car rented from a leasing company in Cedar Rapids, Iowa. It was known that the sellers had earlier requested that Agent Overbaugh complete the transaction in Iowa City, but he refused. The district court took judicial notice of the fact that the Cedar Rapids, Iowa airport is located between Cedar Rapids (which is in Linn County) and Iowa City, and is a little more than 100 miles from Des Moines. Bubis later arrived at the Hyatt House in the leased car and entered room 135 after taking a yellow shoe bag from the trunk. All of these facts and circumstances within the knowledge of the officers at the time they arrested Bubis are consistent with the officers' belief that the two occupants of room 135 were the partners referred to by Kadota who had come from Florida with him to make the drug transaction. We agree with the district court's conclusion that the cumulative effect of these facts and circumstances, viewed in a common sense fashion, was sufficient to establish probable cause.

Bass' arrest was based on the same facts and circumstances that justified Bubis' arrest in addition to the information Bubis supplied to the officers regarding the armed person in room 135. Therefore, the arrest of Bass and the resulting searches and seizure of evidence were clearly lawful.

Accordingly, the judgments of the district court are affirmed.

Affirmed.