Jackson WARREN, Appellant,

v.

**CITY OF LINCOLN, NEBRASKA; James Breen; Sandra L. Myers and David M. Beggs, Appellees.**

No. 86–1434.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1987.

Decided Jan. 4, 1989.

---

Dorothy Walker, Lincoln, Neb., for appellant.

Richard D. Sievers, Lincoln, Neb., for appellees.

Before LAY, Chief Judge, HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, en banc.

WOLLMAN, Circuit Judge.

Jackson Warren filed this suit under 42 U.S.C. § 1983 (1982) against the City of Lincoln, Nebraska (the City), and three Lincoln police officers. At the close of Warren's case-in-chief, the district court[1] dismissed the action as against Officer Sandra L. Myers and the City. Upon the conclusion of the trial, the jury returned a verdict in favor of the remaining defendants, Officers James Breen and David Beggs. After hearing the case en banc,[2] we affirm.

I.

At approximately 4:30 a.m. on April 13, 1985, Lincoln police officers responded to a call from a man who claimed someone had just attempted to break into his apartment through a second story window. The man described the intruder, who had fled the scene on foot toward the east, as a slender white male in his early twenties wearing a white short-sleeved shirt. One of the officers who responded to the call was teamed with a police dog, which tracked the intruder's scent east from the crime scene to Jackson Warren's parked car four and one-

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The panel opinion of this court filed previously, *Warren v. City of Lincoln*, 816 F.2d 1254 (8th Cir.1987), was automatically vacated when the petition for rehearing was granted.

half blocks away. Warren is a slender white male who at the time of the incident was nineteen years old and wearing a light-colored short-sleeved shirt. As the police approached the car, Warren started his engine and attempted to drive away.

A police officer flagged Warren down and told him to park his car. Officer Myers then approached Warren in his car and asked for some identification. She briefly questioned Warren and then ran a check on Warren's license from her squad car. She discovered an outstanding warrant for Warren's arrest for failure to appear on a traffic violation. Myers arrested Warren on the failure-to-appear warrant, performed a pat-down search, and put him in her squad car.

Myers took Warren to the Lincoln jail complex and turned him over to Detective Breen at approximately 5:00 a.m. Breen had been investigating a series of burglaries and sexual assaults that had some similarities to the April 13 attempted burglary. Breen questioned Warren on his background and on his whereabouts earlier that day, telling Warren that he was questioning him in connection with recent prowling incidents. At one point during the questioning Detective Beggs entered the room and examined Warren's hands and shoes, looking for trace evidence. Breen denied Warren's requests to see an attorney and neither Breen nor any other Lincoln police officer read Warren his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After the questioning, Breen took Warren to the police station for fingerprints and photographs. Beggs, who had dusted for fingerprints at the scene of the attempted burglary, took numerous prints of Warren's fingers and palms. Beggs also took three mug shots and three instant camera photos of Warren. Breen then returned Warren to the jail. Warren called two friends, seeking money in order to post bond on the failure-to-appear warrant. After waiting for a friend to arrive with the money and for completion of his release forms, Warren left the jail at 7:10 a.m.

Warren's complaint alleged that the police officers, pursuant to Lincoln police department policy, violated his constitutional rights in contravention of the fourth, fifth, sixth, and fourteenth amendments by falsely imprisoning him, denying him access to counsel, subjecting him to harassing interrogation, fingerprinting him, and photographing him.

After the district court dismissed the City and Officer Myers from the suit, the jury returned verdicts in favor of Detectives Breen and Beggs. Warren appealed. The panel opinion held that the district court committed error by failing to instruct the jury on pretextual arrest, that the jury instructions on post-arrest detention and qualified immunity were erroneous, and that the district court improperly dismissed Myers and the City. We conclude that Warren's detention was lawful because probable cause existed to arrest him for attempted burglary. We also conclude that Warren's other grounds for recovery are without merit.

II.

Warren's primary argument is that his detention was in violation of rights guaranteed him under the fourth amendment, made applicable to the states through the fourteenth amendment. We therefore must first ascertain into which of the three categories of police-citizen encounters the encounter between Warren and the officers falls, *see United States v. Poitier*, 818 F.2d 679, 681–82 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988), for each category justifies a different level of detention.

The first category consists of consensual communications between officers and citizens, involving no coercion or restraint of liberty. Such encounters do not constitute seizures and thus are beyond the scope of the fourth amendment. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983). The second category is the so-called *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Florida v. Royer*, 460 U.S. at 498–99, 103 S.Ct.

at 1324–25, pursuant to which an officer having a reasonable suspicion that a person has committed or is about to commit a crime may temporarily seize the person for limited investigative purposes. Finally, there are full-scale arrests, which must be supported by probable cause. *Poitier,* 818 F.2d at 682.

All agree that the officers' reasonable suspicion of Warren's involvement in the attempted burglary justified the initial stop. The officers argue that Warren's arrest was based on the discovery of the valid arrest warrant, and that the detention at the station was supported by that warrant, as well as their reasonable suspicion of his involvement in the attempted burglary. On rehearing en banc, however, they add the argument that the officers also had objective probable cause to arrest Warren for attempted burglary, and that the detention thus was permissible as incident to a valid arrest.

"As a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below." *Wright v. Newman,* 735 F.2d 1073, 1076 (8th Cir.1984) (citations omitted). The pertinent record with respect to the facts and circumstances surrounding Warren's arrest, however, is fully developed in this case, and those facts and circumstances are uncontroverted. When the issue of probable cause arises in a damage suit and "the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court." *Linn v. Garcia,* 531 F.2d 855, 861 (8th Cir.1976) (citations omitted); *see also Gramenos v. Jewel Cos.,* 797 F.2d 432, 438–39 (7th Cir. 1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987); *Garris v. Rowland,* 678 F.2d 1264, 1270 (5th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982). Under such circumstances, the general rule against considering new arguments on appeal has less appeal. *See Wright v. Newman,* 735 F.2d at 1076. We therefore opt to exercise our discretion in favor of reaching the probable cause issue. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976).

## A.

█ Officer Myers and Detective Breen testified that they believed they lacked probable cause to arrest Warren for the attempted burglary. Such testimony, however, does not end the inquiry, for it is well-settled "that '[t]he test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts.' " *United States v. O'Connell,* 841 F.2d 1408, 1419 (8th Cir.) (quoting *White v. United States,* 448 F.2d 250, 254 (8th Cir.1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972)), *cert. denied,* —— U.S. ——, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988).

In *Royer,* the defendant sought to suppress evidence on the ground that he was being illegally detained when he consented to a search. The Supreme Court noted that "the fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause * * *." *Id.* 460 U.S. at 507, 103 S.Ct. at 1329 (citing *Peters v. New York,* decided with *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). A panel of this court enunciated this principle in *Klingler v. United States,* 409 F.2d 299 (8th Cir.), *cert. denied,* 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969).

> Because probable cause for an arrest is determined by objective facts, it is immaterial that [the officer], at the hearing on the motion to suppress, testified that he did not think that he had "enough facts" upon which to arrest [the suspect] for armed robbery. His subjective opinion is not material.

*Id.* at 304 (citations omitted); *see also United States v. Salinas–Calderon,* 728 F.2d 1298, 1301 (10th Cir.1984) ("[S]ince courts have never hesitated to overrule an officer's determination that he had probable cause to arrest, consistency suggests a court may also find probable cause despite an officer's judgment that he did not have probable cause to arrest."); *United States*

*v. Lester,* 647 F.2d 869, 873 (8th Cir.1981) ("the validity of the arrest should be judged by whether the arresting officers actually had probable cause for the arrest, rather than by whether the officers gave the arrested person the right reason for the arrest"). Thus, although the officers believed they possessed only a reasonable suspicion that Warren was involved in the attempted burglary, a court nevertheless may conclude that there was in fact probable cause. If there was probable cause, the officers' conduct must be adjudged accordingly.

### B.

We thus must determine whether the facts available to the officers objectively gave rise to probable cause to arrest Warren for attempted burglary. Probable cause exists when at the moment the arrest was made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (citing *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)). "The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of the circumstances." *United States v. Archer,* 840 F.2d 567, 573 (8th Cir.1988) (citing *United States v. Bubis,* 744 F.2d 61, 64 (8th Cir.1984)).

The following uncontroverted facts were within the officers' knowledge. A man reported that a slender white male in his early twenties wearing a white short-sleeved shirt had tried to gain entry into his second floor apartment by attempting to force open a window.[3] The victim saw the intruder running from the apartment to the east. Officer Alexander, who had arrived at the scene within five minutes, put his tracking dog on the intruder's scent. The dog led the officers to Warren's car, parked four and one-half blocks east of the scene of the attempted burglary. The police had received the call only eleven minutes earlier. It was 4:30 a.m. in a residential neighborhood, with only one other person in the general area. Warren is a slender white male, who was nineteen years old and wearing a light-colored short-sleeved shirt. As the officers approached his car, Warren attempted to drive away. We believe that these facts and circumstances would warrant a prudent person in believing that Warren was the intruder.

In *United States v. Skinner,* 412 F.2d 98 (8th Cir.), *cert. denied,* 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969), officers were looking for a bank robber described as a white male, 35–45 years old, slender in build, less than five feet six inches in height, having brown hair turning gray, in need of a shave, and hatless. *See id.* at 101. A panel of the court found probable cause to arrest a suspect fitting the description, found at 1:15 p.m., one hour after the robbery, sitting at a lunch counter in a hotel in the same geographic area where the robber was reported to have fled. *See id.* at 100–02. In some respects the description in *Skinner* was more specific than that in this case. Here, there was no

---

**3.** Nebraska law provides the following definition of burglary:

> A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value.

Neb.Rev.Stat. § 28–507(1) (Reissue 1985). The relevant portions of the criminal attempt statute provide as follows:

> (1) A person shall be guilty of an attempt to commit a crime if he:
>     \*     \*     \*     \*     \*     \*

> (b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.
>     \*     \*     \*     \*     \*     \*

> (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

*Id.* § 28–201. The officers could reasonably believe that one who climbs to a second story window and tries to force it open has attempted burglary.

mention of the intruder's height, hair color, amount of beard growth, or presence or absence of a hat. On the other hand, the description was more precise here in that it contained the color and style of the intruder's shirt. More importantly, Warren was found much sooner after the crime, at a time when far fewer people would be about, in a residential area as opposed to a business establishment, and had been located by use of a tracking dog.

In *Klingler*, officers learned, at 4:00 a.m., of a robbery by a man wearing sunglasses, a green jacket, and needing a shave. *See* 409 F.2d at 301. The robber was believed to be one of two occupants of a 1955 or 1956 white and brown Pontiac, having Minnesota license plates and having two construction helmets visible through the rear window. *See id.* at 301–02. An hour later, a car parked in a private parking lot began to move as an officer drove by. The officer stopped the car, which was a 1957 white and salmon or coral Pontiac with South Dakota license plates, and which had two construction helmets visible through the rear window. *Id.* at 302. The court found probable cause to arrest the passenger, who was wearing an olive waistcoat and had two days' growth of beard. Sunglasses were also on the car's dashboard. *See id.* at 303–04. Again, the officers who arrested Warren had more facts before them than did the officer in *Klingler*. They had a more detailed description of the suspect and they found Warren much sooner after the crime. They found Warren in the general vicinity in which the intruder had fled, and a tracking dog had led them to Warren. In *Klingler*, the officer did have a general description of the car, although the suspect's car varied from the description with respect to the license plates and color. These cases demonstrate that under the facts within the officers' knowledge, viewed objectively, probable cause existed to arrest Warren.

Other cases also support a finding of probable cause under these facts. *See, e.g., United States v. Valez*, 796 F.2d 24, 25–27 (2d Cir.1986) (probable cause where race, age, and clothing matched description, and suspect was found in immediate area of crime within a short space of time, despite fact that description contained no mention of facial hair and arrestee had thick mustache and small beard), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed. 2d 1005 (1987); *United States v. Slipka*, 735 F.2d 1064, 1065–66 (8th Cir.1984) (probable cause where suspect matched detailed clothing description and suspect fled upon eye contact with officer); *Hollman v. Rundle*, 461 F.2d 758, 759 & n. 1 (3d Cir.1972) (probable cause to arrest suspect whose race, height, hair color and style, and clothing color fit description and was found one night after the crime near the scene with a man closely fitting a second description); *Dessus v. Pennsylvania*, 452 F.2d 557, 562 & n. 9 (3d Cir.1971) (probable cause where defendant matched description as to race, height, and clothing color, and was found five blocks away within minutes of the crime, at 4:30 a.m. in a racially-mixed neighborhood, with very few people afoot in the vicinity), *cert. denied*, 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972).

### C.

■ Because we conclude that probable cause existed to arrest Warren for attempted burglary, Warren's assertion that his detention violated his constitutional rights must be rejected. The "Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). A valid warrantless arrest, however, provides legal justification "for a brief period of detention to take the administrative steps incident to arrest." *Id.* In *United States v. Boyer*, 574 F.2d 951 (8th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978), the arrestee arrived at the police station at 3:30 p.m., was subjected to various administrative procedures until 4:30 p.m., questioned by FBI agents until 5:45 p.m., and taken before a magistrate late the next morning. *See id.* at 952–53. We held that this was not unnecessary delay under Rule 5(a) of the Federal Rules of Criminal Procedure. *See id.* at 955.

Warren was detained at the jail for approximately two hours and twenty minutes. During that time he was questioned about his background and activities that night, fingerprinted, photographed, processed on the failure-to-appear warrant, and allowed to acquire money with which to post bond. This detention falls well short of the extended restraint of liberty prohibited by *Gerstein.*

■ We are left then with the officers' failure to read Warren the *Miranda* warnings and Breen's denial of Warren's requests to see counsel. The reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself. *See Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624. Thus, the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action. *See Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976); *Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir.1968); *Hampton v. Gilmore,* 60 F.R.D. 71, 81 (E.D.Mo.), *aff'd,* 486 F.2d 1407 (8th Cir.1973); *cf. Hensley v. Carey,* 818 F.2d 646, 649–50 (7th Cir.) (no section 1983 claim for officer's failure to conduct a *Stovall* and *Brathwaite*-type line-up), *cert. denied,* —— U.S. ——, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987). Warren's sixth amendment right to counsel also was not violated, as that right had yet to attach. Warren never was subjected to adversary judicial criminal proceedings such as formal charges, arraignment, or indictment. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

Because we conclude that the uncontroverted facts demonstrate that Warren's rights were not violated, the judgment of the district court is affirmed.

JOHN R. GIBSON, Circuit Judge, concurring in the affirmance.

I agree that the judgment should be affirmed. While I agree with Judge Wollman's opinion, I am not convinced that it is necessary that we go this far. The panel opinion demonstrates that the issue of whether the traffic arrest was pretextual was not raised in the trial court. My examination of the record confirms that it was not. Indeed, an instruction offered by Warren conceded that he did not claim the arrest to be wrongful. (D.R. 40). This issue was not briefed when the case was before the panel. I am satisfied that the issue of unlawful detention was properly submitted. Further, the officers in relying on the Nebraska statute did not violate clearly established law and were protected by qualified immunity.

HEANEY, Circuit Judge, dissenting, with whom LAY, Chief Judge, and ARNOLD and McMILLIAN, Circuit Judges, join.

I respectfully dissent. The majority holds that Police Officer Myers had probable cause as a matter of law to arrest Warren for attempted burglary. It reaches this conclusion—even though Officer Myers conceded in district court that she did not have probable cause to make such an arrest, even though the case was tried in district court on the theory that no probable cause existed, and even though the issue of probable cause was not presented to this Court on the initial appeal. In light of these facts, and the fact that a reasonable jury could find that probable cause did *not* exist, this Court is without the authority to hold that there was probable cause to arrest Warren for attempted burglary. For these reasons, as well as those stated in my original opinion, I would reverse and remand.

The existence of probable cause in section 1983 actions constitutes a question of fact for the jury, not this Court, to decide. We, along with several other circuits, have recognized that the question of probable cause in a section 1983 action belongs to the trier of fact. "[I]n civil rights actions of this nature, where a genuine issue of fact on the existence of probable cause for arrest is presented, the question should be submitted to the jury." *Giordano v. Lee,* 434 F.2d 1227, 1230 (8th Cir.1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971), *citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson v. Haas,* 341

F.2d 497 (3d Cir.1965); and *Marland v. Heyse*, 315 F.2d 312 (10th Cir.1963). This rule was reaffirmed by this Court in *Linn v. Garcia*, 531 F.2d 855 (8th Cir.1976), in which we stated:

> Where the facts are in dispute or where they are subject to different inferences, the question of probable cause is for the jury; however, where the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court.

*Id.* at 861.

The task of determining whether probable cause to arrest exists as a matter of law in section 1983 actions is different than a similar determination in the context of a direct review of a criminal arrest. *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Justice Kennedy, writing for the Ninth Circuit, stated:

> In the latter situation, we are called upon to review both law and fact and to draw the line as to what is and is not reasonable behavior. * * * By contrast, in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury * * *.

*Id.* at 1007–08 (citations omitted).

Thus, a finding that probable cause existed as a matter of law is appropriate "only if no reasonable jury could find that the officers did or did not have probable cause to arrest." *Id.; see also, Lester v. City of Chicago*, 830 F.2d 706, 715 (7th Cir.1987) (question of whether police had probable cause to arrest plaintiff for disorderly conduct was properly submitted to jury); *B.C.R. Transport Co., Inc. v. Fontaine*, 727 F.2d 7, 10 (1st Cir.1984) ("[W]hether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case, a question to be resolved by the trier of fact."); *Deary v. Three Un-named Police Officers*, 746 F.2d 185, 191 (3d Cir.1984) (ultimate fact of probable cause to arrest plaintiff for bank robbery was for jury to decide); *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1467 (9th Cir.1984) (if reasonable persons might reach different conclusions

about the facts, the establishment of probable cause is for the jury, upon a proper instruction about the law); *Reeves v. City of Jackson, Miss.*, 608 F.2d 644, 650 (5th Cir.1979) (probable cause for arrest constitutes jury question as jury could have found that officers had no cause to arrest plaintiff for public intoxication).

The Third Circuit, in *Deary*, dealt with the precise issue taken up by the majority in this case. It wrote:

> [W]e are here required to decide whether summary judgment in Deary's case could properly have been granted on the issue of probable cause. That is, taking all of Deary's allegations as true and resolving all inferences in her favor, whether a reasonable jury could find that the police officers could not have reasonably believed that Deary committed the City Bank robbery, i.e., did not have probable cause for her arrest. Like the *Patzig [v. O'Neil*, 577 F.2d 841 (3d Cir.1978)] case, we too are faced with substantial circumstantial evidence which would sustain a finding of probable cause: the alleged similarity in appearance and resemblance in physical characteristics of Deary to the suspect pictured in the bank surveillance photographs, as well as Deary's appearance of flight from the arresting officers on the day of her arrest.
>
> Nevertheless, despite considerable evidence which, in our view, would lead to a finding of probable cause, in light of *Patzig*, we cannot say that the trial judge, on the record before him, could summarily decide the issue of probable cause. To the extent that the presence or absence of probable cause depended on the resemblance of Deary to the bank surveillance photographs taken at the time of the robbery, the question necessarily becomes a factual one for jury determination. Nor does the fact that Deary's physical characteristics resembled that of the woman who robbed the bank change our conclusion that those facts, too, were for jury consideration. Moreover, even though Deary concedes that she was "jogging" when the officers apprehended her, whether that activity gave the reasonable perception of flight

is also a matter which must be left to the judgment of the jury to take into account together with such considerations as the speed at which she was "jogging" (running), her overall demeanor, and the other aspects of her appearance.

To grant judgment for the defendant police officers at this juncture, therefore, would be to usurp the role which a jury must play in fact finding—here, determining the ultimate fact of probable cause or the lack of it.

*Deary v. Three Un-named Police Officers*, 746 F.2d at 191 (footnotes omitted).

In light of these cases, it is clear that an appellate court can find probable cause for an arrest in a section 1983 case in only two circumstances: 1) when there are no factual disputes surrounding the arrest; and 2) when reasonable persons, in the fair exercise of judgment, could not draw different inferences from those facts.

This Court cannot say that there are no issues of disputed fact in this case because the probable cause issue was conceded at trial and Warren had no opportunity to develop any facts relating to this defense.

If we ignore this important consideration and consider all the facts as presently developed in the light most favorable to Warren, I believe a reasonable jury could find that no probable cause existed to arrest Warren for attempted burglary.

First, the police officers involved in Warren's arrest and detention testified at trial that they did not have sufficient objective facts on which to base a probable cause finding. Myers testified that she only had a "reasonable suspicion" that Warren had attempted burglary that morning. Detective Breen similarly conceded at trial that, even after detaining and questioning Warren, the police had no probable cause to arrest him. If the police officers participating in the arrest could reach a conclusion different from that of the majority of this Court, it only demonstrates the need to submit the question to a jury.

Second, the description of the suspect was too general to constitute reliable objective evidence. Warren matched the victim's general description of the alleged intruder: a thin, white male, in his twenties, wearing a light-colored short-sleeved shirt. Yet, Dean Leitner, Chief of Police for the City of Lincoln, testified at trial that this description was not sufficient in and of itself to take an individual into custody because "that would fit hundreds of thousands of people." (T. 164). Although Warren did not have the opportunity to develop this line of questioning at trial, it is quite possible that the factual circumstances surrounding the attempted break-in would lead a jury to discount the reliability of the victim's statements. The record also indicates that another white male was sitting in a car near the general area where the police dog was tracking (T. 244), yet no explanation was given as to why Warren was detained for questioning while the other man was not. (T. 326).

Third, the dog track was of questionable reliability. The majority makes much of the fact that the police dog, hot on the intruder's scent, "led the officers to Warren's car." The majority, however, places more reliance on the dog's ability to hold a track in a residential area than the officers on the scene. Officer Jeffrey Alexander, the officer handling the police dog, testified that he did not feel he could arrest Warren based solely on the track. He stated that car exhaust, gasoline, any number of other chemicals and the scent of another human being interfere with the dog's ability to track. (T. 446). Thus, with further factual development, a jury could reasonably conclude that the dog had lost the scent of the intruder. Because there was another person in the same general area, a jury could also reasonably conclude that the dog track was inconclusive as to Warren's culpability.

Finally, the majority points to the fact that Warren attempted to leave the area when he saw a police officer. Warren explained at trial that he started to turn his car around because there were a lot of police cars at the corner of 20th and C Streets, and he wanted to avoid "the mess." (T. 15). As stated in the *Deary* case, whether this activity gave the reasonable perception of flight is a matter which must be left to the judgment of the jury.

These facts, taken as a whole, are not susceptible of only one inference. A jury could reasonably draw the conclusion that the description of the intruder was too general, the dog track too unreliable, and the attempt to leave the area too ambiguous to constitute objective evidence of probable cause.[1]

In section B of its opinion, the majority states, "We thus must determine whether the facts available to the officers objectively gave rise to probable cause to arrest Warren for attempted burglary." Assuming, without deciding, that this objective standard is appropriate, it remains clear that it is not for this Court to sit as factfinder, as the majority clearly does.[2]

In light of the fact that we cannot nor should not say that probable cause existed as a matter of law, this Court should refuse to consider the issue raised by the appellees for the first time in its brief on rehearing en banc.[3] If the majority feels compelled to reach the probable cause issue, the most it should do is remand the matter to the district court with directions for a new trial, at which time both parties would have an opportunity to present evidence on the issue. The district court then should submit the issue to the jury with appropriate instructions unless it found the evidence insufficient to create a jury question.

The appellees asked this Court to reverse the panel decision on the issue of pretextual arrest and qualified immunity. As the majority does not rest its decision on either of these legal theories, I will not repeat my discussion in the panel opinion, except to say that I continue to believe that it correctly states the law in this Circuit.

I must, however, comment on Neb.Stat. Rev. § 29–427 and the appellees' interpretation of it.

Neb.Rev.Stat. § 29–427 provides in pertinent part:

> **Peace officer; grounds for arrest; detention of accused; grounds.** Any peace officer having grounds for making an arrest may take the accused into custody or, already having done so, detain him further when the accused fails to identify himself satisfactorily, or refuses to sign the citation, or when the officer has reasonable grounds to believe that * * * (3) such action is necessary in order to carry out legitimate investigative functions * * *.

Nev.Rev.Stat. § 29–427 (1983).

Appellees argue that, even if they had no probable cause to arrest Warren for attempted burglary, section 29–427(3) gave them the authority to make an arrest based on the traffic warrant and to detain Warren for questioning with regard to the separate crime of attempted burglary. Not only is such an interpretation contrary to the plain language of the statute, but it also renders the statute unconstitutional.

As I read this statute, a police officer may detain anyone legally arrested if the officer reasonably believes it necessary to

---

1. The cases cited by the majority as support are inapposite, as they are cases in which courts had to directly review criminal arrests. None of the cases involved factual determinations by an appellate court in section 1983 suits.

2. In section C of the opinion, the majority concludes that probable cause existed to warrant Warren's arrest for attempted burglary. The majority does *not* say that probable cause exists because the facts are susceptible to only one reasonable inference. Thus, its conclusion can only be categorized as a statement of fact.

3. The Supreme Court of the United States has stated that "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed. 2d 826 (1976) (federal appellate court is justified in resolving an issue where the proper resolution is beyond any doubt, or where an injustice might otherwise result). In *Singleton,* the Supreme Court chastised this Court, however, for addressing an issue on the merits when one party had had no opportunity to develop or defend its position on the issue at the trial level. *Id.* This Court has held, as a general rule, that we will not consider arguments or theories on appeal that were not advanced in proceedings below, unless the issue can be resolved as a matter of law, the pertinent record has been fully developed, and the opposing party had notice that the specific issue would be raised. *Wright v. Newman,* 735 F.2d 1073, 1076 (8th Cir.1984).

further investigate that person's role *in the crime for which he was arrested.* It does not grant police the power to make a legal arrest and to detain that person for questioning with regard to a separate crime when there is no probable cause to make an arrest for that crime. Neither the language of provision (3) nor the overall tenor of the statute warrants such a sweeping interpretation.

Furthermore, the appellees' interpretation would render Neb.Rev.Stat. § 29–427 unconstitutional. Police are not permitted to hold someone in custody beyond the time necessary to process him with respect to the crime of arrest for the sole purpose of trying to connect that person to another crime. To do so is an unlawful seizure. *See Adams v. United States,* 399 F.2d 574 (D.C.Cir.1968), *cert. denied sub nom. Roots v. United States,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969). In *Adams,* individuals arrested for a robbery, brought to the Robbery Squad offices at Police Headquarters at 2:00 p.m. and booked at 4:00 p.m., were then put in lineups for other crimes as to which there was no probable cause to arrest or to detain them. The court excluded the results of the lineups as the incident of an unlawful arrest and custody for interrogation. The court explained:

> Here, the lawful basis for appellants' arrest and detention rested solely on the probable cause for the belief that they had committed an attempted robbery on November 5 at the North Carolina Avenue store. There was no probable cause to detain them under arrest for other matters. Rule 5(a) provides that presentment without unnecessary delay shall be made on the charge for which they were arrested. To continue their custody without presentment for the purpose of trying to connect them with other crimes is to hold in custody for investigation only, and that is illegal; its operative effect is essentially the same as a new arrest and, if not supported by probable cause, it is an illegal detention.

> \*   \*   \*   \*   \*   \*

> On the precise facts shown by this record, we think the effect of Rule 5(a) is to convert at least as of 4:00 P.M. on the afternoon of appellants' arrest, their continued detention at the police station into an unlawful arrest without probable cause in respect of the crime for which they were convicted.

> \*   \*   \*   \*   \*   \*

> An arrest made on probable cause can bring a man lawfully into the hands of police, but that detention does not, absent compliance with Rule 5(a), continue to be lawful for all purposes, including the investigation of his possible connection with other crimes.

399 F.2d at 577–78 (footnotes omitted); *see United States v. Poole,* 495 F.2d 115, 125 (D.C.Cir.1974) (Leventhal, J., concurring) (unnecessary delay after arrest is evidence of involuntariness), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975); *Commonwealth v. Lumb,* 288 Pa.Super. 11, 430 A.2d 1188, 1190 (1981).

The words of former Chief Justice, then Judge Burger, in his concurring opinion are instructive:

> To my mind, the importance of the investigation of crimes other than that for which the original arrest was made is not that there may be something resembling a new "arrest," but that the period of "unnecessary delay" forbidden by Fed.R.Crim.P. 5(a) has then been reached. Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested. However, when delay of presentment to the magistrate is for the purpose of investigation of *other* crimes, then there is no doubt that the "delay" has become "unnecessary."

*Adams v. United States,* 399 F.2d at 579 (Burger, J., concurring) (emphasis in original).

I believe that holding a person beyond that time necessary to process him for the

crime for which he was arrested in order to investigate that person's role in other crimes constitutes an unlawful seizure under the Fourth Amendment. Where a statute is susceptible of two constructions, under one of which the statute is valid, while under the other it is unconstitutional or of doubtful validity, the Nebraska Supreme Court will adopt the construction which gives the statute validity. *State v. Evans*, 215 Neb. 433, 338 N.W.2d 788, 793 (1983). As appellees' version of Neb.Rev.Stat § 29–427 violates the Fourth Amendment, I believe the Nebraska Supreme Court would adopt the interpretation which limits investigatory detention to situations where police need to investigate the detainee's role in the crime for which he was arrested. Thus, any detention beyond the time necessary to process Warren with respect to the traffic warrant for the purpose of investigating the attempted burglary is not justifiable under Neb.Rev.Stat. § 29–427 and would constitute an unlawful seizure based solely on reasonable suspicion of the sort prohibited in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). and *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).[4]

---

**4.** The normal procedure for processing a person who fails to appear for a traffic violation entails taking him to a correction officer, booking him, setting bond and releasing him promptly upon payment of bond. The jury should have been instructed that if Warren was held beyond the time necessary to process him, then the detention was an unlawful one.