Michael KELLY, Plaintiff/Appellee,

v.

Kurtis BENDER, Individually and in his capacity as Police Officer of Des Moines; Michael R. Moody, Individually and in his capacity as Police Officer of Des Moines, Defendants/Appellants,

City of Des Moines, IA, a political subdivision of the State of Iowa, Defendant.

No. 93–2412.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1994.

Decided May 4, 1994.

Steven Lussier, Des Moines, IA, argued for appellant.

Timothy J. Walker, Des Moines, IA, argued (Timothy S. Eckley, on the brief), for appellee.

Before BOWMAN and WOLLMAN, Circuit Judge, and ALSOP,* Senior District Judge.

WOLLMAN, Circuit Judge.

Michael Kelly brought this action under 42 U.S.C. § 1983 against Des Moines, Iowa, police officers Kurtis Bender and Michael Moody. Kelly alleged that defendants arrested him without probable cause and used excessive force in making the arrest in violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. Bender and Moody sought summary judgment based on qualified immunity. The district court determined that genuine issues of material fact existed and denied their motions. We affirm in part, reverse in part, and remand for further proceedings.

## I.

Kelly lived at 5513 Aurora in a ground floor apartment with sliding glass doors opening onto a porch and a 100–yard incline leading to the street. At 10:30 p.m. on January 14, 1991, Kelly was in his apartment with some friends and neighbors, including Bob Holmes, discussing gunshots that they had heard coming from the apartment complex across the street. At that time, uniformed patrol officers Bender and Moody arrived at 5415 Aurora on an unrelated matter. Holmes yelled from Kelly's porch to the officers in the street: "Are you here to arrest the asshole that's doing the shooting?" The officers responded by asking Holmes to come down and talk to them about it.

Holmes did not have any shoes on, so Kelly volunteered to go. He walked out of the sliding glass doors to his porch and down the hill. As he approached the street, Kelly asked the officers: "Are you here to arrest the asshole that's shooting off the gun?" The officers asked Kelly to come into the street so that they could talk to him. When he asked why, they ordered him into the street. Kelly responded that he had come to help and he was not trying to cause any trouble. When the officers again ordered

him into the street, Kelly told them that he did not want any problems and thought he would just go home. He turned, took two steps, and started to run up the snow-covered hill.

The parties differ widely on what happened next. Kelly claims that he slipped and fell to the ground face down, whereupon the officers tackled him and, when he turned his head, Bender struck him on the forehead with a flashlight. Although he offered no resistance, the officers choked him and pushed his face into the snow and threatened while handcuffing him to break his thumb and pull his arm off.

The officers' version is that they chased Kelly, whom Moody caught and pulled to the ground. When Kelly then rolled over onto his back, raised his legs, and attempted to kick Moody, Bender pushed Kelly's head back into the snow with a flashlight. As Kelly continued to resist, Moody applied pressure to his throat in order to force Kelly onto his stomach so that he could handcuff him. It is undisputed that Kelly received a cut on his forehead that required emergency room treatment.

The officers charged Kelly with disorderly conduct, interference with official acts, resisting a police officer, assault on a police officer, and public intoxication. Following a trial on February 25, 1991, the state court judge found Kelly not guilty on all counts. Kelly then filed the present action. His complaint included the Section 1983 claim, as well as pendent state claims. Defendants moved for summary judgment, the district court denied the motion, and defendants filed this appeal.

## II.

Kelly initially contends that we lack jurisdiction over this appeal. A district court's order denying a motion for summary judgment is not ordinarily a final decision and thus not usually reviewable on appeal. *See* 28 U.S.C. § 1291. However, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of

---

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of     Minnesota, sitting by designation.

law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We have jurisdiction over this appeal because, although largely fact-based, it presents the legal question of whether Kelly raised a genuine issue of material fact regarding whether the officers' conduct violated his clearly established rights. *See Wright v. South Arkansas Regional Health Center, Inc.,* 800 F.2d 199, 203 (8th Cir.1986).[1]

### A. Unlawful Arrest

■ An arresting officer is entitled to qualified immunity on an unlawful arrest claim if a reasonable officer could have believed probable cause existed for the arrest. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). "Actual probable cause ... is not necessary for an arrest to be objectively reasonable." *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989). In determining whether the officers are entitled to qualified immunity in the present case, the issue is whether they had "arguable" probable cause to arrest Kelly for one of the offenses charged. *See id.; cf. Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1080 (8th Cir.1990) (officer needed probable cause to believe plaintiff committed one of several offenses charged; immaterial that officer thought, perhaps mistakenly, that he had probable cause for other offenses charged).

■ The officers arrested Kelly for disorderly conduct, among other charges. Disorderly conduct is a simple misdemeanor which includes "[m]ak[ing] loud and raucous noise in the vicinity of any residence or public building which causes unreasonable distress to the occupants thereof." Iowa Code Ann. § 723.4 (West 1993). Here the officers, who were 100 yards away, heard a man yelling obscenities from Kelly's porch. When they asked him to come out and talk to them,

Kelly emerged from the porch and virtually repeated the statement that Holmes had yelled. We conclude that at that moment the officers had a reasonable suspicion based on specific and articulable facts that Kelly had committed the offense of disorderly conduct and, therefore, they could lawfully temporarily detain him for questioning. *See Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968); *Warren v. City of Lincoln, Neb.,* 864 F.2d 1436, 1438–39 (8th Cir.) (en banc), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). When the officers ordered Kelly into the street for questioning, Kelly did not comply but instead turned and ran up the hill. We further conclude that the officers' preexisting reasonable suspicion coupled with Kelly's flight constituted arguable probable cause to arrest Kelly for disorderly conduct. *See United States v. Slipka,* 735 F.2d 1064, 1066 (8th Cir.1984) (flight, coupled with knowledge relating suspect to evidence of crime, is proper factor to consider in decision to make arrest). Thus, the officers were entitled to qualified immunity on this claim.

■ Kelly argues that the affidavit of Bob Holmes, which Kelly mistakenly did not file with the district court, established disputed facts regarding whether other tenants called from their balconies and whether the officers asked for "someone" to come down and talk to them or specifically asked for the man who had yelled from Kelly's porch. Even if we choose to consider the affidavit, *see* Fed. R.App.P. 10(e), it does not establish a genuine issue of material fact. Crediting Holmes's version of the events, the officers still had arguable probable cause to arrest Kelly for disorderly conduct when they did. Kelly also argues that it is material that the officers testified at his criminal trial that they intended to arrest whoever came out of the apartment for disorderly conduct. He contends that this testimony proves that when the officers ordered him into the street

---

1. Defendants invite us to exercise jurisdiction over the district court's denial of summary judgment on the pendent state claims. We decline to do so. These state law claims do not involve the type of "closely related issues of law" discussed in *Drake v. Scott,* 812 F.2d 395, 399 (8th Cir.),

*cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987), or *Moreno v. Small Business Admin.,* 877 F.2d 715, 716 (8th Cir.1989), wherein resolution of the issue of law would dispose of the immunity question.

they were attempting an arrest for which they did not have probable cause, rather than merely conducting an investigatory stop based on reasonable suspicion. This argument fails because qualified immunity is an objective determination; we do not "delve into the subjective motivation of the arresting officers." *Gorra,* 880 F.2d at 97. Even if the officers intended to arrest Kelly when they ordered him into the street, when viewed objectively their actions at that time comported with the Fourth Amendment in terms of the degree of intrusion allowed for a warrantless investigatory stop. *See United States v. Schmidt,* 662 F.2d 498, 504 (8th Cir.1981); *Richardson v. Bonds,* 860 F.2d 1427, 1430 (7th Cir.1988).

### B. Excessive Force

The officers and Kelly gave conflicting accounts of the circumstances surrounding his excessive force claim. The disputed facts are material because they affect the outcome of the issue whether a reasonable officer could have believed that the force used was necessary under the circumstances. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Fitzgerald v. Patrick,* 927 F.2d 1037, 1039 (8th Cir.1991) (per curiam); *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991). In determining the reasonableness of the officers' use of force, we must consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers and others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989).

Kelly alleges that he put up no resistance, yet the officers tackled him, hit him over the head with a flashlight, choked him, and shoved his face into the ground while arresting him for a simple misdemeanor. The officers claim that they used only the force necessary to overcome Kelly's resistance to their efforts to arrest him. Viewing these conflicting accounts in the light most favorable to Kelly, a genuine issue of fact exists as to the reasonableness of the force used in effecting Kelly's arrest. Thus, the district court correctly denied summary judgment on this claim.

We reverse the district court's denial of summary judgment as to the unlawful arrest claim, affirm the district court's denial of summary judgment as to the excessive force claim, and remand the case to the district court for further proceedings consistent with this opinion.