UNITED STATES of America, Plaintiff,

v.

**Skye Renee DAVIS, Defendant.**

**No. Crim. 98–31(1)(JRT/FLN).**

United States District Court,
D. Minnesota.

June 12, 1998.

Andrew S. Dunne, Assistant United States Attorney, Minneapolis, MN, for Plaintiff.

Keith M. Ellison, Hassan & Reed, Minneapolis, MN, for Defendant.

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

TUNHEIM, District Judge.

This matter is before the Court on the Government's objection to a portion of the Report and Recommendation of Magistrate Judge Franklin L. Noel dated April 20, 1998.[1] The Magistrate Judge recommended that a statement of the defendant be suppressed as the fruit of a Fourth Amendment violation.

In relevant part, the Magistrate Judge found that St. Paul Police Officer Michael Johnson arrested defendant after she admitted that her report to the police regarding stolen guns was false. Although Johnson testified at the hearing before the Magistrate Judge that he believes he had probable cause

---

1. The Government does not object to the recommendation that defendant's motion to suppress be granted as to another statement.

to arrest defendant for filing a false report, the Magistrate Judge found that he and the other officers detained her for over two hours for the purpose of investigating whether she committed a federal gun crime. Thus, the Magistrate Judge determined that the police had unreasonably delayed a prompt judicial determination of probable cause on the issue of the false report. In addition, the Magistrate Judge concluded that the conditions the interrogating officers (ATF Agent Kaminski and St. Paul Police Sergeant Flaherty) placed on defendant in agreeing to release her constituted an unreasonable restraint of her liberty. Based on these findings of unconstitutional conduct, the Magistrate Judge recommended that the statement given by defendant during her detention—while she was undergoing an interrogation—be suppressed.

The Government objects to this recommendation on a number of grounds. It argues the short delay defendant experienced was not unreasonable. It also points out that the Eighth Circuit has held clearly that arraignments may be delayed by interviews and questioning of the defendant. *See Warren v. City of Lincoln, Nebraska,* 864 F.2d 1436, 1441–42 (8th Cir.), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *United States v. Boyer,* 574 F.2d 951, 955 n. 5 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978). It further contends that there is no evidence in the record to support the Magistrate Judge's conclusion that defendant was arrested and detained for the sole purpose of investigating whether she had committed a federal gun crime.[2] Finally, the Government insists that the terms of defendants' agreement to cooperate with the police do not constitute a Fourth Amendment seizure, and, even if they do, defendant's statement is not a fruit of these terms because the agreement was reached after defendant made the statement.

The Court has reviewed *de novo* the objection to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and D.Minn. LR 72.1(b)(2). Based on this review, the Court agrees with the Magistrate Judge that the statement should be suppressed.

■ As an initial matter, the Court is inclined to agree with the Government that the statement at issue cannot be a fruit of the terms under which defendant was released, because these terms were discussed *after* defendant made the statement. To this extent, the Court does not adopt the Magistrate Judge's reasoning.

■ However, the Court finds, as the Magistrate Judge did, that the statement was obtained unlawfully because it was the product of defendant's being detained for over two hours for the sole purpose of investigating whether she had committed a federal gun crime. It is undisputed that Johnson placed defendant under arrest; that he transported her to, and then detained her at the police station; and that she was not free to leave until after she had reached an agreement with the interrogating officers. Although Johnson later opined that he had probable cause to arrest defendant for filing a false report with the police, and although he indeed may have had such probable cause, his testimony makes clear that he arrested and then detained the defendant with the singular intent of investigating further the possibility that she had violated federal gun laws. Moreover, his testimony regarding his conduct at the police station establishes that he neither attempted nor intended to charge defendant on the false report theory. In particular, once he and the defendant arrived at the station, Johnson talked to Officer Flaherty about the issue of trafficking in guns, turned defendant over to Flaherty and Kaminsky so that they could interrogate her regarding the gun issue, and then left the station. He never filed a report regarding defendant's false report, and she was not arraigned on such a charge. Likewise, Kaminski's testimony clearly supports the conclusion that she and Flaherty were only interested in pursuing an investigation regarding potential federal gun crimes.

---

2. The Government argues that there is insufficient evidence in the record to support such a finding. In the alternative, the Government contends the Court should hold another hearing on the issue of the intent of the police in detaining defendant.

Thus, testimony at the hearing establishes defendant was detained for over two hours not because of a necessary delay in processing prior to a probable cause hearing on a false report charge. Rather, she was held for that period only because the police wanted to interrogate her regarding possible gun violations.[3]

As the Magistrate Judge concluded, detention and delay solely for investigatory purposes is inherently unreasonable under *Riverside v. McLaughlin*, 500 U.S. 44, 57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In that opinion, the Supreme Court stated:

> Such a [probable cause] hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of *gathering additional evidence to justify, the arrest. . . .*

*Id.* (emphasis added).[4] Also, the unreasonableness of the detention in this case is particularly apparent because its purpose was to facilitate an investigation of a different crime from the one that, at least in theory, provided the grounds for the arrest.

Moreover, that the detention here was for the sole purpose of further investigating a (different) crime distinguishes this case from both *Boyer* and *Warren.* In each of those cases, the defendant was detained and interviewed while undergoing the administrative steps leading to an arraignment hearing on the charges underlying his arrest. In such circumstances, the court concluded that the modest delays the defendant endured were reasonable. Here, however, defendant was not detained so that she could be processed and then arraigned on false report charges; she was detained only for the purpose of interrogation regarding possible federal gun crimes. This interrogation therefore was neither part of nor incident to the administrative steps leading to an arraignment. Thus, the detention in this case, unlike those found reasonable in *Boyer* and *Warren,* was inherently unreasonable, regardless of its modest length.[5] *See McLaughlin,* 500 U.S. at 57, 111 S.Ct. 1661.

Because the statement at issue was a fruit of this unreasonable detention, the Court agrees with the Magistrate Judge that it should be suppressed. The Government's objection is overruled.

## ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, the Court **OVERRULES** the objection of the Government and **ADOPTS** the Magistrate Judge's Report and Recommendation as set forth above. Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's motion to suppress confessions [Docket No. 15] is **GRANTED IN PART** and **DENIED IN PART.**

2. Defendant's motion is **DENIED** as to the first statement made to Officer Johnson.

3. Defendant's motion is **GRANTED** as to the second statement made to Officer Johnson.

---

3. The Government argues the Magistrate Judge lacked support in the record for reaching this conclusion, and it contends it is entitled to another hearing on the issue of the intent of the police. The Court disagrees. Regardless of what Johnson may otherwise state, his testimony at the hearing before the Magistrate Judge and the circumstances surrounding defendant's arrest, detention, and release, establish his intent in arresting and detaining defendant. The Court believes his and other testimony at the hearing are more than sufficient to support this conclusion.

4. The Court made this statement context of describing unreasonable delays that are shorter than forty-eight hours, the outer limit of presumptive promptness established by the Court. *See id.* ("This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours.").

5. This analysis is consistent with that in Judge John R. Gibson's concurrence in *Warren.* In discussing the constitutionality of a Nebraska detention statute, Judge Gibson stated as follows:

> Police are not permitted to hold someone in custody beyond the time necessary to process him with respect to the crime of arrest for the sole purpose of trying to connect that person to another crime. To do so is an unlawful seizure.

864 F.2d at 1446 (citing *Adams v. United States,* 399 F.2d 574 (D.C.Cir.1968), *cert. denied sub nom., Roots v. United States,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969)).

4. Defendant's motion is **GRANTED** as to the statement made to Agent Kaminski and Sargent Flaherty.

## REPORT AND RECOMMENDATION

**THIS MATTER** came before the undersigned United States Magistrate Judge for hearing on March 25, 1998, on defendant's pretrial motion to suppress confessions. The government called as witnesses Special Agent Katherine Kaminski from the United States Bureau of Alcohol, Tobacco and Firearms (ATF), and Officer Michael J. Johnson from the Saint Paul Police Department. Defense counsel called defendant, Skye Renee Davis.

## I. FINDINGS OF FACT

On May 2, 1997, Davis summoned the St. Paul police to her home to make a report regarding stolen guns. Before the day was over, Davis made three statements regarding the guns she initially reported stolen. The first was made to St. Paul Police Officer Michael Johnson who went to Davis' home to take the report. Johnson found Davis and her two-year-old daughter at home. After asking Davis several questions, he became suspicious of Davis' report that guns were stolen from her and told her he had doubts about its truth. He said he believed she was * buying and selling guns and that he wanted a truthful story from her. He informed Davis that if she did not tell him the truth he would start an investigation regarding the guns, and, if the investigation showed Davis was illegally trafficking in guns, she could go to jail and lose custody of her child. He also told her if she cooperated with the police other options would be available to her.

Defendant is the primary caretaker of her child and the child's father is not involved in their lives. Davis felt devastated and overwhelmed at the thought of going to jail and losing custody of her daughter. She admitted making a false report of theft and proceeded to give a second statement regarding the guns to Johnson. After Davis gave the first two statements in her home, Johnson brought her to the police department for further questioning. The officer told Davis she would be speaking to other investigators at the precinct to "see where it would go from there." Officer Johnson never gave Davis a *Miranda* warning and did not tell her that she was under arrest, though he testified that she was not free to refuse his request to go to the station house.

Defendant was placed in a holding cell at the police department while Johnson spoke with Sergeant Flaherty of the St. Paul Police regarding the matter. After this conversation, Johnson had no further involvement with the investigation or Davis' case. The next interview Davis had was with Sergeant Flaherty and Special Agent Kaminski of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF). They gave defendant a *Miranda* warning by reading with her a form that outlined her rights. After reading each statement of her rights, Agent Kaminski asked Davis if she understood the statement and then Davis initialed it. She signed her name at the end of the form. During the interrogation, Davis made a third statement.[1] Kaminski testified that during the interview they made no threats or promises, and that Davis did not ask to end the interview or ask for an attorney.

Despite the apprehension and interrogation by state and federal officers, Davis was not booked or charged with any crime that day. Instead, she was released following two to three hours of detention after agreeing to undertake the following actions which the court finds as a fact were implicit, if not explicit conditions of her release:

1) she would cooperate with ATF agents to gather evidence against her boyfriend who was suspected of illegally trafficking in guns;

2) she would report daily to an ATF Agent;

3) she would record conversations with her boyfriend; and

4) she would conceal her cooperation from her boyfriend.

Agent Kaminski testified that she asked Davis whether she had children and knew

---

1. The Government conceded at the hearing that this statement was made during custodial interrogation.

that Davis was the primary caretaker and very bonded to her child. Agent Kaminski told Davis that she would inform the United States Attorney of her cooperation, and that would help her case. Davis believed that she had no choice but to cooperate with the investigation if she wanted to retain custody of her daughter.

Davis testified that her boyfriend was not in close contact with her after she was released. According to Agent Kaminski, Davis provided only one recorded phone conversation to the Government. Kaminski suspects that Davis disclosed her cooperation with law enforcement to her boyfriend soon after her release. Agent Kaminski stopped contacting Davis about a month after her initial arrest because she believed Davis' cooperation was no longer useful to the government. The ATF agent testified that the statement given by Davis while in custody on May 2, 1997, provided probable cause to arrest her on federal charges. Kaminski further testified that she knew that day that she would recommend to the United States Attorney that Davis be prosecuted for federal firearm crimes. Davis, however, was not booked into jail or charged with any offense that day. Instead she was released upon the conditions described above and was not charged with any crime until nine months later when a federal grand jury returned the instant Indictment.

## II. CONCLUSIONS OF LAW

### A. Davis' First Statement Is Admissible

█ The statement that Davis made to Officer Johnson forming the basis of the false report of theft is clearly admissible as evidence at trial. Defendant telephoned the police of her own volition and freely made the report to Officer Johnson when he arrived. There is no argument that Davis was in custody at that time, and the situation presented no need for *Miranda* warnings.

### B. Second Statement Must Be Suppressed

Admissibility of the second statement Davis made regarding the guns after Officer Johnson began to question her is governed by the Eighth Circuit case *United States v. Griffin*, 922 F.2d 1343 (8th Cir.1990). In *Griffin*, federal agents went to Griffin's home and interrogated him as to his involvement in a crime. *Griffin*, 922 F.2d at 1346. The issue there was whether or not Griffin was in custody. Recognizing that not all custodial interrogations occur at the station house, the *Griffin* court identified six indicia to aid the Court in deciding whether or not a suspect is in custody. *Id.* at 1347–1352. The first three factors, if present, mitigate against a finding of custody: 1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; 2) whether the suspect possessed unrestrained freedom of movement during questioning; 3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions. *Id.* at 1349. The last three factors, if present, are coercive and point to the existence of custody: 4) whether strong arm tactics or deceptive stratagems were employed during questioning; 5) whether the atmosphere or the questioning was police dominated; 6) whether the suspect was placed under arrest at the termination of the questioning. *Id.*

Here, the first mitigating factor is clearly not present. There is no evidence that Officer Johnson ever informed Davis that she was not compelled to respond to questioning. To the contrary, he pressured her into answering questions about the guns by threatening an investigation that could lead to her incarceration and separation from her child. The record is silent regarding the second mitigating factor as neither party presented testimony regarding Davis' freedom of movement during the officer's questioning. The facts support mitigation against the finding of custody under the third factor because defendant initiated contact with the authorities, (albeit to report a crime, not to submit to an interrogation).

█ Two out of the three coercive factors are present and point to the existence of custody. Officer Johnson used strong-arm tactics in his attempt to elicit a confession from Davis by discussing the potential loss of custody of her child if his investigation into Davis' activities showed she had engaged in illegal gun transactions. Regarding the next factor, the facts are unclear as to whether the questioning was police dominated; how-

ever, the Court sees that as unlikely as only one officer was present in Davis' home. The last factor shows indicia of custody: Davis was brought to the police station at the end of Officer Johnson's questioning and Officer Johnson testified that at that time she was not free to go.

On balance, the Court concludes that Davis was in custody at the time that Officer Johnson questioned her in her home. Two of the *Griffin* factors indicate that a custodial situation had arisen. The one mitigating factor, that Davis had initiated the contact with the police, is diminished by the fact that Davis initiated contact to report stolen guns, and presumably not for the purpose of discussing a crime allegedly committed by herself.

During any custodial interrogation, law enforcement officers must inform the suspect of her rights to avoid self-incrimination and to have an attorney present during questioning. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Such warnings reduce the risk of defendants feeling compelled to make self-incriminating statements, which are not admissible at trial. *New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. Because Officer Johnson failed to give Davis any *Mi-*

*randa* warning, any statements made to him during his questioning of her are not admissible.

## C. Davis' Third Statement Must Be Suppressed

### 1. Fourth Amendment Violation

After being held at the Saint Paul Police Department Annex, Davis underwent custodial interrogation by Agent Kaminski and Sergeant Flaherty. During interrogation, Davis made a third statement regarding the guns she had reported stolen.[2] Because Davis was denied her right under the Fourth Amendment to have a prompt judicial determination of probable cause, following her arrest, the statement she made to Agent Kaminski and Sgt. Flaherty should be suppressed.

In *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that, as a prerequisite to any extended restraint on liberty following arrest, the arrestee is entitled to a prompt judicial determination of probable cause under the Fourth Amendment. The Court based its holding on the Fourth Amendment protections of liberty and privacy, mapping the history of these protections through Supreme Court precedent.[3]

---

2. Defendant argues that her third statement was not made voluntarily. Though Davis stated at the hearing that she remained frightened that she would lose custody of her daughter and did not sign the waiver of rights form voluntarily, no evidence suggested that Agent Kaminski or Sergeant Flaherty coerced or pressured Davis into signing the form. The court, therefore, rejects defendant's claim that the statement was not voluntary, but recommends that it be suppressed because of the Fourth Amendment violation discussed above in the text.

3. Over 50 years ago in *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court condemned the practice of detaining arrested persons for the purpose of extracting a confession from them, before taking them before a judicial officer. *Id.* at 343–44, 63 S.Ct. 608. The Court observed that the practice was inconsistent with the common law tradition which assigned different roles to the various participants in the criminal justice process. Several years later in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Court reaffirmed its holding in *McNabb* and observed:

"The scheme for initiating a federal prosecution is plainly defined. The police may not

arrest upon mere suspicion but only on 'probable cause.' The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.... Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'"

*Id.* Today, the common law tradition which, as the Court in *McNabb* observed, dates back to at least 1807 (when former Vice President Aaron Burr was arrested and taken before Chief Justice John Marshall for a judicial determination for probable cause) is embodied in Rule 5(a) of the Federal Rules of Criminal Procedure. In recent years non-compliance with this rule has become more common. *See e.g., United States v. Clark,*

■ The Fourth Amendment liberty guarantees serve to restrain officers who, with a single-minded concern for law enforcement, may neglect to consider a suspect's individual liberty interests.[4] *Id.* at 112, 95 S.Ct. 854; *Mallory v. United States,* 354 U.S. 449, 452, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 343–344, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The Supreme Court, mindful of the individual liberties protected by the Fourth Amendment, has repeatedly expressed a preference for arrests made pursuant to warrants over warrantless arrests. *Gerstein,* 420 U.S. at 113, 95 S.Ct. 854; *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States,* 371 U.S. 471, 479–82, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Arrests made with warrants ensure that an objective judicial officer removed from the intensity of investigation has determined that probable cause exists to justify the arrest and disruption of the suspect's Fourth Amendment liberties. *Gerstein,* 420 U.S. at 112, 95 S.Ct. 854; *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) ("The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

However, the Court also has recognized that law enforcement officers need discretion to make spontaneous stops and arrests for protection of public safety or to ensure apprehension of suspected criminals. *Gerstein,* 420 U.S. at 113–114, 95 S.Ct. 854; *Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Circumstances may arise that necessitate quick action by patrol officers to avoid danger to themselves or others in the community. *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Even so, though the power to make spontaneous arrests may suspend the privacy interests of the individual and the need for a judge to make an independent assessment of probable cause, it does not eliminate those needs or concerns. *Gerstein,* 420 U.S. at 113–114, 95 S.Ct. 854. As the Court stated in *Gerstein,* "Once the suspect is in custody . . . the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral

---

Cr. No. 4–96–127, slip op. at 7 n. 3, (D.Minn. Nov. 22, 1996); *United States v. Chevre,* Cr. No. 97–236 (D.Minn. Oct. 28, 1997). Had there been compliance with Rule 5(a) the Fourth Amendment violation which occurred here would have been prevented.

4. The rules of criminal procedure developed out of these concerns. "The purpose of this impressively pervasive requirement of criminal procedure is plain. . . . A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its

vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime. It reflects not a sentimental but a sturdy view of law enforcement. It outlaws easy but self-defeating ways in which brutality is substituted for brains as an instrument of crime detection. A statute carrying such purposes is expressive of a general legislative policy to which courts should not be heedless when appropriate situations call for its application." *McNabb v. United States,* 318 U.S. 332, 343–44, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Id.* at 114, 95 S.Ct. 854 (citation omitted).

Though the facts in *Gerstein* pertained to pretrial detention of the defendant, the Supreme Court made the requirement of a prompt judicial determination of probable cause effective whenever a "significant restraint upon liberty" was imposed. *Gerstein,* 420 U.S. at 114, 95 S.Ct. 854. Justice Powell wrote,

> Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint on liberty. See, e.g., 18 U.S.C. § 3146(a)(2), (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest.

*Id.* The Court declined to specifically define what kinds of release conditions would constitute a significant restraint. *Id.* at 125 n. 26, 95 S.Ct. 854. The Court, however, did give the above cited statute as an example. This statute codified as conditions of release those that "place[d] restrictions on the travel, association, or place of abode of the person during the period of release." Pub.L. No. 89–465, § 3(a), 80 Stat. 214 (1966), *repealed by* Pub.L. 98–473, Title II, c. 1 § 203(a), 98 Stat.1976 (1984).

### 2. Application of Gerstein in Davis' Case

The Supreme Court has recognized that Fourth Amendment rights may be implicated when officers circumvent the judicial determination of probable cause requirement by not charging arrestees, *United States v. Al-*varez–Sanchez, 511 U.S. 350, 360 n. 5, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In *Alvarez–Sanchez,* a suspect was arrested and taken into custody on state narcotics charges late in the afternoon on a Friday. *Id.* at 352, 114 S.Ct. 1599. The next Monday he made a statement to federal officers and was charged with a federal crime. *Id.* He did not appear before a federal magistrate until Tuesday. *Id.* The issue on appeal was whether the six hour rule articulated in Title 18, United States Code, Section 3501 began to run when the suspect was arrested and charged with violating state drug laws. The Court held the Federal Statute was not implicated at the time of defendant's arrest on state charges. However, Alvarez–Sanchez also argued to the Supreme Court that his Fourth Amendment rights under *Gerstein* and *McLaughlin* had been violated. *Id.* at 360 n. 5, 114 S.Ct. 1599. The Court expressly declined to address the Fourth Amendment claim because it had not been raised before the District Court or Court of Appeals. The Court expressed no opinion on the merits of the Fourth Amendment claim. *Id.* at 358, 360 n. 5, 114 S.Ct. 1599.

■ Here, Officer Johnson arrested defendant Davis in order to investigate whether she was involved in illegal gun sales.[5] Though he did not tell her at that time she was under arrest, he explained at the hearing that she was not free to go and he believed he had probable cause to arrest her for giving a false police report. The officer transported Johnson to a holding cell. *See Florida v. Royer,* 460 U.S. 491, 502–503, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (finding that police actions, particularly transporting a suspect to another location, can constitute an arrest even if the officer does not comply with the formal requirements of arrest). She remained in custody until after she confessed to federal gun violations. She was released only after she agreed to undertake several,

---

**5.** The Supreme Court has made clear that the Fourth Amendment, and the Rules of Criminal Procedure do not permit investigatory arrests. *Brown v. Illinois,* 422 U.S. 590, 602–03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Blackmun, J.) (unlawful arrest not cured by the giving of *Miranda* warnings because "arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings."); *see also, Dunaway v. New York,* 442 U.S. 200, 215–216, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

ongoing activities in cooperation with an ATF investigation which imposed significant restraints on her liberty, in particular on her association with her boyfriend.

The constitutional violation here was the failure to provide Davis with a prompt judicial determination of probable cause following Davis' arrest before imposing these restraints on her liberty. The officer arrested Davis without charging her while another officer and federal agent secured her cooperation against a backdrop of potential charges and future detention that would effect Davis' relationship with her daughter.[6] They then released her upon conditions that engendered significant restraints upon her liberty: she was to try to retrieve incriminating statements from her boyfriend; she was to record telephone conversations with her boyfriend; she was to conceal her cooperation from her boyfriend; and she was to report daily to an ATF Agent.[7]

This Court finds the restrictions upon Davis to be comparable to those noted as significant restraints upon liberty by the Court in *Gerstein*. Davis was required not only to continue to associate with the individual under investigation, her association was intended to deceive him regarding her complicity with the Government and induce him to make incriminating statements. Her life also was circumscribed in that she had to report to the ATF agent daily and she was required to record telephone conversations with her boyfriend.

The Court in *Gerstein* did not define what it meant by "prompt", but that issue was addressed in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). There the Court held that county jails would be immune to system wide facial challenges to their criminal procedures if processes were in place to assure that the judicial determination of probable cause was made within 48 hours of arrest. The Court there, however, observed,

> "This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably."

An example cited by the Court of an unreasonable delay of less than 48 hours is a delay, "For the purpose of gathering additional evidence to justify the arrest." *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661. Here, the police arrested defendant, and detained her for the purpose of investigating whether there was probable cause to believe she had committed any federal gun crime. The failure to provide the defendant with a prompt judicial determination of probable cause in order to obtain information to charge Davis for a federal gun crime is specifically what the Court forbid in *McLaughlin*.[8]

▮ The Court is well aware that the executive branch of the government, by and through the United States Attorney and federal investigators, is instilled with the power and discretion to charge crimes when and against whom it finds appropriate.[9] *See*

---

6. Davis sought to avoid disruption of her family relationships by cooperating, and the law enforcement officers used the threat of such disruption to secure her cooperation. It is not coincidental that disruption of family relationships was a primary concern for the Supreme Court in deciding that pretrial detention or other significant liberty restraints necessitated a judicial determination of probable cause in *Gerstein*, 420 U.S. at 114, 95 S.Ct. 854.

7. Agent Kaminski testified that she believed Davis would have been released that day even if she did not agree to cooperate. Significantly, this fact was never communicated to Davis. This does not change the fact that Davis was then aware that she could be charged and further detained at any time, and her freedom was implicitly conditioned upon her cooperation with the investigation.

8. While it may now appear that Officer Johnson had probable cause to arrest defendant for the misdemeanor of making a false report to a police officer, (Minnesota Statutes Section 609.505), defendant was never charged with that crime, and it is clear from the record that neither Sgt. Flaherty nor Special Agent Kaminski had any interest in investigating that crime. As that was the only crime for which Officer Johnson had probable cause to arrest Davis, she had a right to have a prompt judicial determination of probable cause regarding that crime, and to not be detained while Flaherty and Kaminski investigated federal violations.

9. The Court also recognizes that individuals under investigation have no right to arrest once probable cause arises; the timing of that arrest is up to the investigating officers. *Hoffa v. United States*, 385 U.S. 293, 309–10, 87 S.Ct. 408, 17

*United States v. Robertson,* 45 F.3d 1423, 1437 (10th Cir.1995); *United States v. Giannattasio,* 979 F.2d 98, 100 (7th Cir.1992). By the same token, the prosecutor and executive branch investigators cannot avoid judicial enforcement of the Fourth Amendment by delaying the charging decision, while releasing suspects they have arrested on conditions that impose significant restraints on liberty.[10]

### 3. Remedy

The appropriate remedy for a constitutional violation is to exclude from evidence the fruits of the violation, in order to put the government in the same position it would have been in had there been no constitutional violation and to deter any such future violation by law enforcement agents. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Here the statement Davis made while being interrogated by Agent Kaminski and Sergeant Flaherty is the product of the Fourth Amendment violation, and must, therefore, be suppressed.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that defendant Skye Renee Davis'

L.Ed.2d 374 (1966); *O'Reilly v. United States,* 486 F.2d 208, 210 (8th Cir.1973). The facts of Davis' case are clearly distinguishable: she was arrested as soon as the officer discovered the existence of probable cause that she made a false police report.

10. It appears that the delay between Davis' arrest and her first judicial appearance over nine months later, may have also violated Federal Rule of Criminal Procedure 5(a) and 18 U.S.C. § 3501(c). *See, e.g., United States v. Bear Killer,* 534 F.2d 1253 (8th Cir.1976). (No violation of Rule 5 or § 3501 when reasonable delay was occasioned by suspect's intoxication and the need to travel 100 miles to Magistrate). *United States v. DiGregorio,* 795 F.Supp. 630 (S.D.N.Y. 1992) (violation of Rule 5(a) resulting from an arrest and release does not warrant dismissal of Indictment but is fully remedied by suppressing statements made by the suspect during the period between his arrest and his appearance before a judicial officer). Compliance with the statute and rule, would clearly have prevented the constitutional violation. The Government's arguments that Davis was not in federal custody and therefore not entitled to the protection of Rule 5

motion to suppress confessions [# 15] be **GRANTED in part and DENIED in part** as follows:

1. As to the first statement Davis made to Officer Johnson, the motion should be DENIED;

2. As to the second statement Davis made to Officer Johnson, the motion should be GRANTED; and

3. As to the statement Davis made to Sgt. Flaherty and Special Agent Kaminski, the motion should be GRANTED.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the

or 18 U.S.C. § 3501(c) miss the mark. It is the Fourth Amendment violation that requires suppression of Davis' confession. The court here expresses no opinion on whether a violation of Rule 5(a) which does not also constitute a Fourth Amendment violation would require a similar result.

The Eighth Circuit has also recognized that *Gerstein* requires a judicial determination of probable cause independent of the rules of criminal procedure. *Wayland v. City of Springdale,* 933 F.2d 668 (1991). In *Wayland,* plaintiff brought a civil rights action on behalf of her deceased husband who was arrested but not charged, indicted or arraigned. After six days in custody, Jimmy Wayland was found dead hanging in his jail cell. Reversing a summary judgment order, The Eighth Circuit concluded that *Gerstein* demands a detainee be brought before a judicial officer without unnecessary delay. *Wayland,* 933 F.2d at 670. In answer to the argument that the Springdale police were not at fault because they had notified the prosecuting attorney's office of the arrest, the court indicated, "even if appellees were not responsible for the delay in the arraignment they still may be answerable for the constitutional violation." *Id.*

hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10 days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.